NOTICE

Decision filed 03/10/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 251052-U

NO. 5-25-1052

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 25-CF-1525 |
| | ) | |
| CHRISTOPHER S. ROSEMOND, | ) | Honorable |
| | ) | Jason M. Bohm, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Sholar and Clarke concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2   The defendant, Christopher S. Rosemond, appeals the December 12, 2025, order from the Champaign County trial court that granted the State's petition to deny pretrial release and the December 19, 2025, denial of his motion for relief and immediate release. For the following reasons, we affirm.

¶ 3                               I. BACKGROUND

¶ 4   On December 11, 2025, the defendant was charged with one count of unlawful possession with intent to deliver cannabis in violation of section 5(e) of the Cannabis Control Act, a Class 2

1

felony (720 ILCS 550/5(e) (West 2024)),[1] one count of manufacture or delivery of controlled substances in violation of section 401(d) of the Illinois Controlled Substances Act, a Class 2 felony (720 ILCS 570/401(d) (West 2024)), and one count of unlawful possession of weapons in violation of section 24-1(a)(7)(i) of the Criminal Code of 2012, a Class 2 felony (720 ILCS 5/24-1(a)(7)(i) (West 2024)). The same day, the State filed a verified petition to deny the defendant pretrial release. The petition alleged that the proof was evident and the presumption great that the defendant committed a qualifying offense, and that he posed a real and present threat to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(a) (West 2024).

¶ 5 On December 12, 2025, the trial court held a hearing on the State's petition.[2] The State proceeded by proffer, stating that on December 10, 2025, the Street Crimes Task Force executed a search warrant on the defendant's residence. In the kitchen, officers located 20 white tablets that were suspected to be oxycodone. In the defendant's bedroom, officers located 50 white tablets of acetaminophen and oxycodone, and 50 pink tablets of oxycodone. Officers also found $3,000 in U.S. currency. In the bedroom closet, officers located multiple resealable bags containing more than 500 grams of cannabis, as well as a vacuum sealer.

¶ 6 Also in the bedroom, officers located a Glock handgun as well as 145 rounds of live ammunition and 7 magazines for two different calibers of weapons. Under an end table in the bedroom, officers located "one green card machine gun conversion device, used to convert [a] semiautomatic handgun into a fully automatic handgun." The parties referred to the conversion device as a "switch" throughout the proceedings.

---

[1]The original charging documents stated that the events occurred on November 7, 2025. However, during the probable cause hearing on December 11, 2025, the documents were corrected to state that the offenses occurred on December 10, 2025. The defendant was indicted on these charges on December 18, 2025.

[2]During the December 11, 2025, probable cause hearing, the defendant moved to continue the detention hearing to December 12, 2025, which was granted.

2

¶ 7      The State further proffered that the defendant had a valid Firearm Owner's Identification (FOID) card. The defendant's mother confirmed the bedroom was his, and there was "lots of paperwork with the defendant's name" in the bedroom. After receiving his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), the defendant admitted that he sold cannabis, and that the weapon and switch were his.

¶ 8      Defense counsel proffered that the defendant lived in town with his mother and he had substantial family ties in the area. The defendant helped provide child care for his 7- and 13-year-old sisters while his mother worked. He worked part-time at a barbershop owned by his cousin. The pretrial services report noted that the defendant reported to make $300 a month from his job.

¶ 9      The State proceeded to argument, asserting that the State met its burden in proving that the defendant committed the offense due to his own admission and his mother's confirmation that the bedroom was his. The State argued that this was an extremely dangerous and serious offense in that the defendant possessed a variety of drugs alongside a weapon and ammunition. The State argued that the defendant was dealing drugs within the community, while owning a weapon and ammunition. He even posed a risk to his family, as there were children living in the home where these items were found. The State contended that if the defendant was released back to his home, he would "presumably *** go back to doing the same thing, because that's where he was already committing these offenses to begin with." The State alleged that this was a very dangerous offense and nothing would change if he was released. Accordingly, the State asked that the defendant be detained.

¶ 10      The defense proceeded to argument, and focused on whether any condition or combination of conditions could mitigate any threat the defendant posed. The defense argued that the State failed to prove that there were no such conditions. Defense counsel noted that the defendant owned

and obtained the weapon and ammunition legally. The defendant's counsel noted that the defendant would no longer be allowed to possess weapons while under a felony information and argued that the trial court could impose further conditions requiring the defendant to relinquish his FOID card and any weapons or ammunition in his possession. The defense argued that these conditions would mitigate any danger the defendant may pose to the community.

¶ 11    Further, the defense focused on the defendant's lack of criminal history, other than a cannabis traffic ticket. The weapon was found within the defendant's home during a search and was not loaded when officers found it. While the defendant possessed the switch, which was the only detainable offense, the switch was not attached to the gun when it was found. Also, "[t]here [was] no indication that [the defendant] had the intention to carry that firearm with him outside of his home, or quite frankly, ever even attached the switch to it." The defense did acknowledge, however, that under the statute, that "does not matter. The switch itself [was] the issue."

¶ 12    The defense argued that the defendant had significant stability in the community with his family in the area, had no criminal history, was employed part-time, and provided full-time child care to his younger siblings. He was "incentivized" to comply with any conditions that the trial court would put in place. As such, the defense argued that the State failed to meet its burden of proving that no condition or combination of conditions would mitigate a real and present threat. The defense requested that the defendant be released with pretrial conditions.

¶ 13    The trial court stated that it considered all relevant factors and considered the defendant's lack of criminal history. The court stated, "The combination of drugs and guns is well known as a dangerous one." The court said that while the defendant owned the weapon and ammunition legally, the switch was not legal and the only reason it would be in the defendant's home would be "for use in the protection of himself and his cache of drugs."

4

¶ 14    The trial court found that the proof was evident and the presumption great that the defendant committed a detainable offense. The court also found that the defendant posed a real and present threat, and given the "volume of guns and drugs," no conditions would mitigate that risk. The defendant was ordered detained.

¶ 15    The defendant filed a motion for relief on December 18, 2025. The motion alleged that the State failed to meet its burden of proving by clear and convincing evidence that the proof was evident or presumption great that the defendant committed the offenses charged; that the defendant posed a real and present threat to the safety of any person or persons or the community; and that no condition or combination of conditions could mitigate the real and present threat.

¶ 16    The trial court held a hearing on the motion for relief on December 19, 2025. The defendant's counsel stated that the defendant was 21 years old and a lifetime resident of Urbana, Illinois. He was a high school graduate who lived with his mother and two juvenile sisters, and he had strong ties to the community. The defendant assisted in caring for his sisters while their mother worked. He worked part-time at his cousin's barbershop. The defendant had one prior misdemeanor for a major traffic offense.

¶ 17    The defense further stated that the charges stemmed from an investigation into the sale of marijuana. There were several controlled buys from the Street Crimes Task Force, and there was no information in the police report from the controlled buys about any weapons observed during the buys. The weapon, a Glock pistol, was found in the defendant's room under the bed, and the Glock switch, which was the basis for the detainable offense, was located in a bag in the defendant's nightstand. The other drug offenses were not detainable.

¶ 18    The State then proceeded by proffer, reiterating the proffer from the detention hearing and stating what officers found as a result of the search warrant. This search result included the drugs,

Glock pistol, live ammunition, and items used to package and sell marijuana. The State said that $3,000 in U.S. currency was located, and this was "significant because the defendant reported in the Pretrial Services Report that he works part-time at a barber shop and makes $300 a month." The State further proffered that officers located the machine gun conversion device, the switch, which "would transform a semiautomatic pistol into an illegal machine gun." The defendant's mother confirmed the bedroom was his, and the defendant admitted that he did sell marijuana, and the weapon and switch were his.

¶ 19    The defense proceeded to argument. First, the defense conceded that the State proved the first element for pretrial detention, that the proof was evident or presumption great that the defendant committed a detainable offense. The defense argued that the State failed to prove dangerousness and that no conditions would mitigate that dangerousness. The defendant's counsel argued there was "not any evidence being shown to the judge that there was any sale of non-marijuana drugs going on here." While the pills containing controlled substances were located in the home, the allegations of the controlled buys were for marijuana. The defendant stated that the gun was found in a container under the bed, not loaded, and the switch was not attached to it. Further, there was no evidence that the gun was taken outside the home or used during any alleged drug transactions.

¶ 20    The defense argued that conditions could be set and the defendant's history showed he would comply. His criminal history only contained one misdemeanor traffic case, and he complied with the court and probation for that offense. He possessed the weapon legally through obtaining a FOID card, which showed he would comply with the law. The defendant's counsel said, "The issue is not with the gun itself. The issue is with that switch." The defendant complied with officers during and after the search warrant, made admissions to them, and "did not attempt to interfere or

otherwise impede their investigation." The defense requested that the defendant be released with conditions, including drug and alcohol evaluations, turning in any weapons, and his FOID card. The defendant would reside with his mother, where he was residing before.

¶ 21 The State argued that while the drug offenses are not detainable, the drug and gun case were "intertwined." The State said, "Presumably, the gun was being used to—to guard the drugs and may well be used in other aspects of the drug trade, and the two together are much more inflammatory, pose a much more significant risk than either of them alone." The officers discovered multiple types of drugs, oxycodone pills, cannabis, and promethazine, during the search, and the State argued that "I think it's a fair inference that's part of the same enterprise as the cannabis."

¶ 22 The State opined that the defendant did not just possess the switch, but he also possessed 145 rounds of ammunition and 7 magazines, with the ammunition for two different calibers of weapons, despite only one weapon being recovered from the home. The State argued that no conditions of release would mitigate the public safety risk posed by the defendant, stating,

"The possession of guns and drugs together does pose a significant public safety risk. Returning him to the home of his mother, it may well be tempting, but this is the same home he was in when this enterprise was going on, and it didn't prevent him from possessing these weapons at that time."

¶ 23 The trial court found that the State met its burden of proof that the defendant committed a detainable offense. The trial court stated that officers found "essentially an illegal pharmacy and a weapon with a cache of ammunition" while conducting the search warrant. While the defendant possessed a FOID card, the card did not "give him a license to possess a weapon to protect his drug dealing business, and clearly, there's no FOID card that allows the possession of an automatic

7

weapon which the switch converts the weapon to." The trial court found that the possession of the weapon, switch, and drugs posed a threat to the community.

¶ 24 As to conditions, the trial court stated the defendant's criminal history was in his favor. However, the defendant would reside back at the same residence if granted release, and the trial court said that while previously living there, the defendant operated his "drug dealing business" and armed himself although his minor siblings were in the home. The trial court said, "He's either not being held accountable or he's really good at deceiving his mother, but whatever the case, it doesn't seem to me a viable option to simply drop him back into the same home in the same conditions with the same structure and simply hope for a better outcome." The trial court found that no conditions would adequately mitigate the threat. The trial court denied the motion for relief. The defendant appealed.

¶ 25                                          II. ANALYSIS

¶ 26 On appeal, the defendant argues that the trial court's pretrial detention order and denial of his motion for relief should be reversed. In support, the defendant argues that the State failed to prove by clear and convincing evidence that the defendant posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions would mitigate any risk posed by his release.

¶ 27 Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and

convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The circuit court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the circuit court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 28    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. However, where the circuit court is asked to consider the testimony of live witnesses, and make factual findings, such as the State's burden of presenting clear and convincing evidence that conditions of pretrial release would not protect any person or the community, that the defendant has a high likelihood of willful flight to avoid prosecution, or that the defendant failed to comply with previously ordered conditions of pretrial release, our review is under the manifest weight of the evidence standard. *Id.* "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v.*

9

*Deleon*, 227 Ill. 2d 322, 332 (2008). Because the parties proceeded solely by proffer, our review is *de novo*.

¶ 29 The court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. Those factors include (1) the nature and circumstances of the offenses charged, including whether they are crimes of violence or involve a weapon; (2) whether the defendant's prior criminal history indicates "violent, abusive, or assaultive behavior, or lack of such behavior"; (3) the identity of any individual to whose safety the defendant may pose a threat and the nature of any such threat; (4) the defendant's age and physical condition; (5) the age and physical condition of the victim or complaining witness; (6) whether the defendant possesses or has access to any weapons; (7) whether the defendant was on probation, parole, or mandatory supervised release when arrested on the underlying charges or any other offense; and (8) any other factor that has a reasonable bearing on the defendant's propensity for violent, abusive, or assaultive behavior (725 ILCS 5/110-6.1(g)(1)-(9) (West 2024)). No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 30 With these factors in mind, we now consider, as the trial court did, the record presented. As a result of a search warrant obtained through controlled buys of marijuana from the defendant, officers discovered 120 pills containing controlled substances, numerous resealable bags, digital scales, $3,000 in U.S. currency, 145 rounds of ammunition, 7 magazines, a Glock pistol, and a switch that converted a semiautomatic weapon into a fully automatic weapon. The defendant does not argue that the State failed to prove he committed a detainable offense, being the possession of the switch. See 725 ILCS 5/110-6.1(a) (West 2024).

10

¶ 31 The defense argues that the State failed to establish that he posed a real and present threat to the safety of the community, based on the specific articulable facts of the case. See *id.* § 110-6.1(e)(2). In making a determination of dangerousness, like the trial court, we may consider a variety of factors that include, but are not limited to, the "nature and circumstances" of the charged offense, and "[w]hether the defendant is known to possess or have access to any weapon or weapons." *Id.* § 110-6.1(g)(1), (7).

¶ 32 The defense argues that the State relied on the bare allegations of the charge and nothing further when arguing the defendant's dangerousness. However, the record rebuts this argument. The charge itself, possession of the conversion switch, was one factor presented to the trial court. In addition to possessing the switch, the officers discovered a Glock pistol. The switch was designed for a Glock pistol to turn it into an automatic weapon. Officers also discovered a large amount of ammunition compatible with the pistol and another caliber weapon. While the weapon and ammunition were legally owned, the switch made the possession of these items dangerous, as it can become an illegal automatic weapon. The defendant admitted that the pistol and switch were both his.

¶ 33 While not detainable offenses, the defendant was also charged with unlawful possession with the intent to deliver cannabis and oxycodone. During the execution of the search warrant, officers found evidence of items used to sell drugs, such as a scale and numerous resealable bags. The defendant admitted to selling cannabis as well.

¶ 34 The defense argues that the State only relied upon the offense itself, but the record shows that all the factors surrounding the detainable offense were taken into consideration. The State did address the risk posed to the community from drug dealing, but it also relied upon the substantial quantity of illicit drugs for sale, combined with the weapon, ammunition, and switch found within

11

the defendant's home to establish the real and present threat that the defendant posed to the community if granted pretrial release. The trial court may consider the nature and circumstances of the charged offense, as well as whether the defendant possessed or had access to any weapons. 725 ILCS 5/110-6.1(g)(1), (7) (West 2024). Accordingly, we affirm the trial court's finding of dangerousness.

¶ 35 The defense also argues that the State failed to prove that no set of conditions would mitigate the defendant's threat to the community if he were released. The defense argues that the defendant surrendering his FOID card, along with any weapons or ammunition he possessed, and complying with any drug or alcohol evaluations would mitigate the risk he posed. The trial court noted that if the defendant was released, he would continue living in the same residence where the incident occurred, and where he lived with his mother and minor siblings. The defendant's drugs and items needed to sell them were all located in that residence. The conditions suggested by the defendant could still permit him to sell drugs from his home, as he was previously doing. Additionally, the defendant's previous compliance with FOID did not prevent him from possessing the switch and does not demonstrate that he would follow a court order stating not to possess any illegal weapons or drugs. As such, we agree with the trial court that no set of conditions would mitigate the defendant's threat to the community.

¶ 36                                    III. CONCLUSION

¶ 37 For the foregoing reasons, we affirm both the trial court's order granting the State's petition to deny pretrial release and its order denying the defendant's motion for relief.


¶ 38 Affirmed.

12